**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JULIAN KASSNER,<br>　　　　　Appellant, | DOCKET NUMBER<br>AT-1221-18-0276-W-1 |
| 　　　v. | |
| DEPARTMENT OF VETERANS<br>　　AFFAIRS,<br>　　　　　Agency. | DATE: May 15, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Julian Kassner, Longwood, Florida, pro se.

Karen L. Mulcahy, Bay Pines, Florida, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND this matter to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

On February 21, 2018, the appellant, a former Chief Physician with the agency's Central Alabama Veterans Health Care System (CAVHCS), filed an IRA appeal with the Board. Initial Appeal File (IAF), Tab 1, Tab 6 at 43. With his initial submission, the appellant provided a December 18, 2017 close-out letter from the Office of Special Counsel (OSC). IAF, Tab 1 at 61-62. In this letter, OSC explained that it was closing its investigation into the appellant's allegations that the agency had taken a series of retaliatory actions against him, to include ultimately removing him from his position, as a result of several protected disclosures and activities. *Id.* The appellant requested a hearing on the matter. *Id.* at 2.

The administrative judge issued an order informing the appellant of the applicable jurisdictional burden for IRA appeals and ordering him to, among other things, list the protected disclosures and activities that he was raising before the Board, provide the dates on which he made the disclosures or engaged in the activities, and identify the actions that the agency took, failed to take, or threatened to take as a result of the disclosures/activities. IAF, Tab 3 at 1-8. In response, the appellant submitted over 2,700 pages of documents. IAF, Tab 4 at 1. The administrative judge rejected the appellant's jurisdictional response in its entirety, and he provided a date by which the appellant could submit a revised response. *Id.* at 1-2. The appellant thereafter submitted four responsive filings totaling over 200 pages. IAF, Tabs 6-9. The agency replied to the appellant's submissions. IAF, Tab 10.

The administrative judge issued an initial decision dismissing the matter for lack of jurisdiction. IAF, Tab 11, Initial Decision (ID) at 1, 13. In so doing, the administrative judge found that the appellant had "partially exhausted" his administrative remedies with OSC. ID at 3. He thereafter identified nine disclosures raised by the appellant, ID at 6-9, but concluded that the appellant had failed to make a nonfrivolous allegation that he had made a protected disclosure

under 5 U.S.C. § 2302(b)(8) or engaged in protected activity, ID at 12-13.[2] In so concluding, the administrative judge described the appellant's filings as "voluminous and labyrinthine," and reasoned that all of the identified disclosures were "particular to [the appellant]" and related to his "own perceived mistreatment by the agency." ID at 9-10. He also reasoned that the Whistleblower Protection Act was "intended to protect a government employee who risks his own personal job security for the *advancement of the public good* by disclosing abuses by government personnel"; however, no such altruism was perceptible from the appellant's disclosures. ID at 10 (emphasis in original). He also found that the appellant's "generalized claims" amounted to mere pro forma allegations and, accordingly, were insufficient to satisfy the nonfrivolous allegation standard. ID at 11.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has not filed a response. In his petition, the appellant challenges the administrative judge's conclusion that he failed to establish Board jurisdiction over the matter; specifically, he argues that the administrative judge: (1) erred in finding that he had only "partially exhausted" his administrative remedies with OSC; (2) improperly considered his motives; (3) failed to consider all of his alleged disclosures; and (4) erred in analyzing the nine disclosures addressed in the initial decision. *Id.* at 4-17.

## ANALYSIS

To establish jurisdiction in a typical IRA appeal, an appellant must prove by preponderant evidence[3] that he exhausted his administrative remedies before OSC and make nonfrivolous allegations of the following: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected

---

[2] Because the administrative judge so found, he did not address the contributing factor or personnel action jurisdictional criteria.

[3] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 11, 14. A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s); *see Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020) ("[W]hen evaluating the Board's jurisdiction over a whistleblower action, the question of whether the appellant has non-frivolously alleged protected disclosures that contributed to a personnel action must be determined based on whether the [appellant] alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face."). Generally, the Board will consider an allegation nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that is more than conclusory, plausible on its face, and material to the legal issues in the appeal. 5 C.F.R. § 1201.4(s). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6.

The appellant exhausted his administrative remedies with OSC.

The appellant argues that the administrative judge erred in concluding that he only partially exhausted his administrative remedies. PFR File, Tab 1 at 8; ID at 3. To this end, he avers that the administrative judge (1) failed to explain his conclusion regarding partial exhaustion and (2) acknowledged that the appellant had, in fact, fully exhausted his administrative remedies. PFR File, Tab 1 at 8. We agree that the administrative judge's conclusion regarding exhaustion was unclear, and we find that the appellant exhausted his administrative remedies with OSC.

Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. The substantive requirements of exhaustion are met when

an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers*, 2022 MSPB 8, ¶ 10. An appellant may demonstrate exhaustion through his initial OSC complaint, correspondence with OSC, or other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the Board appeal. *Id.*, ¶ 11.

Here, in addition to OSC's close-out letter, IAF, Tab 1 at 61-62, the appellant provided the Board with a copy of both his OSC complaint and correspondence that he submitted to OSC, *id.* at 25-60. These filings contain sufficient allegations regarding the claims discussed herein such that we find that the appellant provided OSC with a sufficient basis to pursue an investigation into the same. *See Chambers*, 2022 MSPB 8, ¶¶ 10-11. Accordingly, we find that the appellant has met his burden of proving by preponderant evidence that he exhausted his administrative remedies with OSC.

The administrative judge improperly considered the appellant's motives in his analysis of the alleged disclosures.

The appellant challenges the administrative judge's conclusion that, because his disclosures sought to correct his own perceived mistreatment by agency personnel, they could not constitute protected disclosures under the statute. PFR File, Tab 1 at 8-10; ID at 10. We agree that, in analyzing the alleged disclosures, the administrative judge improperly considered the appellant's motives.

A protected disclosure is one that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an appellant had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the

essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5. Although an appellant's motive in making a disclosure may be relevant to the determination of a reasonable belief, a disclosure is not excluded from protection based on the appellant's motive in making it. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 20 (2015); *see* 5 U.S.C. § 2302(f)(1)(C) ("A disclosure shall not be excluded from subsection (b)(8) because . . . of the employee's or applicant's motive for making the disclosure.").

Accordingly, to the extent the administrative judge found that the appellant's disclosures were per se outside the scope of the Board's jurisdiction because they pertained only to his own alleged mistreatment, we disagree. ID at 10. We analyze the appellant's alleged disclosures having considered his motives only insofar as they are relevant to whether he nonfrivolously alleged that he reasonably believed that his disclosures were protected.

We consider the protected disclosures analyzed in the initial decision and those that the appellant identifies on review.

The appellant argues that the administrative judge failed to address all of his alleged protected disclosures. PFR File, Tab 1 at 4-6. In so arguing, however, he identifies only some of the disclosures that the administrative judge allegedly overlooked. To this end, his petition contains a list of several bullet points describing disclosures that he believes the administrative judge did not consider and thereafter states as follows: "[t]here are only some of examples presented by [the appellant] in his response to the Jurisdictional Order, all of which are incorporated herein." *Id.* at 5-6 (grammar as in original). In essence, the appellant requests that the Board refer to his filings before the administrative judge to extract additional, unaddressed protected disclosures. *Id.* We decline to do so.

An appellant is required to articulate claims with reasonable clarity; the Board is not obligated to pore through a voluminous record to make sense of an appellant's allegations. *Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002); 5 C.F.R. § 1201.114(b) ("A petition . . . for review . . . must be supported by references to applicable laws or regulations and by specific references to the record."). Moreover, attempts to incorporate by reference pleadings that were filed before an administrative judge do not satisfy 5 C.F.R. § 1201.115, which requires the petitioning party to set forth specific objections to the initial decision. *See, e.g., Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 43 n.8. Accordingly, we consider the nine protected disclosures addressed in the initial decision as well as the disclosures identified by the appellant in his petition for review.[4]

The appellant made nonfrivolous allegations of protected disclosures under 5 U.S.C. § 2302(b)(8).

*Disclosures of alleged extortion by Dr. A*

The appellant asserts that he made a protected disclosure regarding illegal activity, i.e., extortion. PFR File, Tab 1 at 5, 10-12. In so asserting, he references a September 30, 2016 email wherein he disclosed to agency officials that another agency physician and his subordinate, referred to here as Dr. A, had asked him to approve her "illegal" request for authorized absences and a recommendation letter so that she could "pursue an executive MBA." *Id.* at 5 (citing IAF, Tab 8 at 44-45); IAF, Tab 1 at 9-10. The appellant stated in this email that Dr. A's request "reasonably equate[d] to a demand for a benefit in excess of $100,000." IAF, Tab 8 at 45. He explained in the email that he had denied Dr. A's request, which had resulted in her exhibiting "subversive, passive aggressive, and confrontational behavior, including making a direct threat that if

---

[4] As indicated, the appellant provides a list of disclosures that he asserts "went unaddressed by the [administrative judge]." PFR File, Tab 1 at 6. This list, however, includes some of the disclosures that the administrative judge considered, in full or part, in his initial decision. *Id.* at 5-6; ID at 6-9.

[the appellant] did not yield to her demands she would report purported misconduct in relation to [his] already approved telework agreement." *Id.* at 44-45.

The appellant is not required to identify the particular statutory or regulatory provision that the agency allegedly violated when his statements and circumstances of those statements clearly implicate an identifiable law, rule, or regulation. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 17 (2011). Rather, at the jurisdictional stage, he is only burdened with nonfrivolously alleging that he reasonably believed that his disclosure evidenced a violation of one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Id.* Further, the question of whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by an employee could reasonably conclude that an action evidenced a violation of law requires that we consider concepts of criminal law from a layman's perspective as well as in a legal sense. *Baldwin v. Department of Veterans Affairs,* 113 M.S.P.R. 469, ¶ 18 (2010); *see Mudd*, 120 M.S.P.R. 365, ¶¶ 8-9 (considering the appellant's lack of special expertise in legal matters in assessing whether she nonfrivolously alleged that she reasonably believed that the agency violated a law, rule, or regulation).

The lay definition of extortion is "the act or practice of extorting," which, in turn, is defined as "to obtain from a person by force, intimidation, or undue or illegal power." *Extortion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/extortion (last visited May 15, 2024); *Extort*, Merriam-Webster, https://www.merriam-webster.com/dictionary/extort (last visited May 15, 2024). The pertinent legal definition of extortion is "[t]he act or practice of obtaining something or compelling some action by illegal means, as by force or coercion." Black's Law Dictionary (10th ed. 2014). Alabama law[5] posits that, "[a] person

---

[5] CAVHCS is located in Montgomery, Alabama. IAF, Tab 1 at 1. Thus, Alabama law is applicable to this appeal. *See, e.g.*, *Baldwin*, 113 M.S.P.R. 469, ¶¶ 18, 20 & n.2 (finding that the law of the state where the alleged criminal act occurred should be applied in determining the reasonableness of an individual's belief that he disclosed a

commits the crime of extortion if he knowingly obtains by threat control over the property of another, with intent to deprive him of the property." *Preskitt v. Lyons*, 865 So. 2d 424, 429 (Ala. 2003) (emphasis omitted) (quoting Ala. Code 1975, § 13A-8-13). Under the Alabama Criminal Code, doing so by means of a threat constitutes extortion in the second degree, a class C felony. Ala. Code. 1975 § 13A-8-15. In pertinent part, it is extortion by means of a "threat" to do an act calculated to substantially harm another person's career. *Preskitt,* 865 So. 2d at 430 (citing Ala. Code 1975 § 13A-8-1(14)(k)). Attempted extortion in the second degree is a class A misdemeanor under Alabama law. *Id.* (citing Ala. Code. 1975 § 13-4-2(d)(4)).

Considering the appellant's assertion that he was reporting "an explicit threat to take action that would be harmful to my career, professional standing and employment position," we agree with his contention on review that he nonfrivolously alleged that he reported what he could reasonably have believed was extortion, which is a violation of law.[6] PFR File, Tab 1 at 11; *see Lewis v. Department of Commerce*, 101 M.S.P.R. 6, ¶¶ 2, 11 (2005) (indicating that a disclosure of a violation of criminal law is a disclosure of a violation of law, rule, or regulation under the statute and finding that the appellant made a nonfrivolous allegation of a protected disclosure when she reported that an agency employee had assaulted her). Accordingly, we find that the appellant made a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8) via his September 30, 2016 email.[7] To the extent that he also claimed below that he first

---

violation of criminal law).

[6] Because we find this disclosure protected as an alleged violation of law, we need not reach the appellant's arguments that he reasonably believed his disclosure also evidenced an abuse of authority and that Dr. A violated agency anti-harassment policy or 18 U.S.C. § 1512, a statute that prohibits tampering with a witness, victim, or informant. PFR File, Tab 1 at 5, 12-13.

[7] The appellant does not challenge, and we discern no basis to disturb, the administrative judge's conclusion that he failed to establish Board jurisdiction over an additional alleged disclosure that was also made on or about September 30, 2016, which pertained to the agency bypassing "standard procedures and associated safeguards"

made this disclosure in August 2016, we similarly find that he met his jurisdictional burden as to this earlier disclosure of the same information. IAF, Tab 1 at 34.

> *October and November 2016 disclosures that Dr. A had a handgun on Government property and that the agency failed to take any action regarding the handgun*

The appellant contends that, on October 5, 2016, he disclosed to agency management that Dr. A kept a loaded handgun in her car while it was parked on agency property. PFR File, Tab 1 at 13. He avers that her actions violated a law, rule, or regulation and caused him to be concerned for his safety.[8] *Id.* Relatedly, he alleges that he subsequently disclosed an "INTENTIONAL CHOICE by management not to investigate [Dr. A] illegally having a gun on [F]ederal property to expose [him] to workplace violence threats and harassment in violation of the [Whistleblower Protection Enhancement Act of 2012 (WPEA)]." *Id.* at 5 (capitalization as in original).

Regarding the latter disclosure, the appellant draws the Board's attention to a November 3, 2016 email that he sent to agency officials. *Id.* (citing IAF, Tab 7 at 11). In this email, the appellant stated that "[t]he issue of the gun" had contributed to his emotional distress, and he asserted that agency officials'

---

related to a congressional inquiry involving the appellant. ID at 7; *see El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015) (explaining that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's IRA jurisdiction), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

[8] The administrative judge analyzed the appellant's October 5, 2016 disclosure in the initial decision; however, he considered only whether the appellant had disclosed a substantial and specific danger to public health or safety. ID at 12. Although the appellant categorized this disclosure in such a manner, IAF, Tab 1 at 35, he was not required to label the category of wrongdoing, *Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 16 n.* (2007). Accordingly, we consider the appellant's assertion on review that he disclosed a violation of law, rule, or regulation on October 5, 2016. PFR File, Tab 1 at 13. In light of our finding that he nonfrivolously alleged he reasonably believed the agency violated a law, rule, or regulation, we do not reach the issue of whether his disclosure could also be protected as a disclosure of a substantial and specific danger to public health or safety.

suggestion that he "should have spoken to the employee who threatened [him] about her gun and review VA policies surrounding firearms with her [was] so shockingly inappropriate." IAF, Tab 7 at 11. Although the appellant did not identify any specific laws, rules, or regulations that he believed agency personnel had violated, he was not required to do so; indeed, the nature of his allegations clearly implicates wrongdoing under 5 U.S.C. § 2302(b)(8). *See DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999) (expressing that some allegations of wrongdoing, such as theft of Government property or fraudulent claims for pay, so obviously implicate a violation of law, rule, or regulation, that an appellant need not identify any particular law, rule, or regulation). Further, a reasonable person in the appellant's position could reasonably believe that Dr. A violated 5 C.F.R. § 1.218(a)(13). That provision prohibits the carrying of firearms on agency property, and possessing firearms in violation of this provision can result in a fine and imprisonment under 38 C.F.R. § 1.218(b)(37). Accordingly, we find that the appellant made nonfrivolous allegations of protected disclosures under 5 U.S.C. § 2302(b)(8) on October 5, 2016, and November 3, 2016.

> *November and December 2016 disclosures regarding the ending of the appellant's telework agreement*

The appellant asserts that he disclosed a violation of "MANY of the [a]gency's rules and regulations [relating to the agency's termination of] his telework agreement." PFR File, Tab 1 at 5 (punctuation as in original). To this end, he references emails dated November 21, 22, and 28, and December 21, 2016, which were sent to agency officials either by the appellant or by the agency's former Chief of Human Resources on the appellant's behalf. *Id.* (citing IAF, Tab 7 at 19-20, 22-23, 25-26, 29). The appellant avers that these emails disclosed that (1) the agency had violated "VA Handbook 5011/28, Part II, Chapter 3, paragraph 6.i" by failing to provide him with 2 weeks' notice prior to cancelling his telework agreement and (2) the notice of termination of his

telework agreement was fraudulent and amounted to an "illegal order" because it listed an incorrect date, provided a false reason for the cessation of the agreement, and was signed by an agency employee without signatory authority. *Id.*

As of late 2016, agency Handbook 5011/28 stated that management could modify a telework agreement "no sooner than two weeks after the employee is notified." IAF, Tab 7 at 19-20; Department of Veterans Affairs, VA Handbook 5011, Hours of Duty and Leave at 67 (Dec. 14, 2018), https://www.va.gov/vapubs/search_action.cfm?dType=2 (last visited May 15, 2024); *see Golden v. Department of Veterans Affairs*, 2023 MSPB 19, ¶ 7 n. 5 (taking official notice of a U.S. Army publication that was readily available to the public on the internet). We conclude that the appellant made a nonfrivolous allegation that he reasonably believed that these emails disclosed a violation of law, rule, or regulation.[9] As to the Human Resources Chief's disclosure of the same information, the Board has found that an agency employee is protected against reprisal for protected disclosures another employee made on his behalf. *Burrowes v. Department of the Interior*, 54 M.S.P.R. 547, 551 (1992). Accordingly, we find that the appellant made a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8) via emails sent in November and December 2016.

*November 28, 2016 disclosure of whistleblower reprisal*

The appellant contends that he disclosed "[m]uch harassment in violation of the WPEA by management." PFR File, Tab 1 at 5. In this regard, he seemingly asserts that both he and the Human Resources Chief disclosed in November 28, 2016 emails that the agency had engaged in retaliatory actions, to

---

[9] The appellant also alleges that he disclosed a "[v]iolation of a legal directive signed by the Network Director." PFR File, Tab 1 at 5 (citing IAF, Tab 7 at 24, 30). The appellant's allegations in this regard are again based on the agency's failure to follow internal rules regarding the cancellation of his telework agreement during the same timeframe. *Id.*

include threatening to place him in an absent without leave (AWOL) status for periods when he was teleworking. *Id.*; IAF, Tab 1 at 51, Tab 7 at 18-21. The appellant avers that his harassment-related disclosures pertained to "an ADMITTED effort by leadership to 'get' [him] immediately after the disclosures 'even if he sneezed wrong,' showing a reasonable belief in retaliation in violation of the WPEA." PFR File, Tab 1 at 5 (capitalization as in original). In essence, the appellant alleges that both he and the Human Resources Chief disclosed that the agency was violating Federal whistleblower retaliation law.

In her November 28, 2016 email, the Human Resources Chief makes reference to the agency terminating the appellant's telework agreement on September 30, 2016, and she requests that agency management "stop threatening him or trying to intimidate him with placing him on an AWOL status." IAF, Tab 7 at 19-20 (grammar as in original). She also states that placing the appellant in an AWOL status "could be seen as a retaliatory action." *Id.* at 20. In his November 28, 2016 email, the appellant makes reference to "a pattern of ongoing harassment" since September 30, 2016. *Id.* at 21. Insofar as the appellant disclosed Dr. A's alleged extortion attempt on this date, IAF, Tab 8 at 44-45, we find that the appellant nonfrivolously alleged that he reasonably believed that the November 28, 2016 emails disclosed a violation of Federal whistleblower retaliation law, *see Mudd*, 120 M.S.P.R. 365, ¶ 9. Accordingly, we find that the appellant made nonfrivolous allegations of a protected disclosure under 5 U.S.C. § 2302(b)(8) via the November 28, 2016 emails.

*December 2016 and January 2017 disclosures regarding medical and privacy concerns*

The appellant contends that he made a disclosure regarding the following: (1) a violation of the Rehabilitation Act of 1973; (2) "an illegal Employee Assistance Program (EAP) referral"; (3) a Privacy Act violation; and (4) the CAVHCS Chief of Staff improperly accessing the appellant's credentialing file. PFR File, Tab 1 at 6, 14-15. The Board's IRA jurisdiction does not extend to

claims of reprisal for complaining of practices made unlawful by the Rehabilitation Act. *See McCray v. Department of the Army*, 2023 MSPB 10, ¶¶ 20-22. Thus, to the extent the appellant alleges that he disclosed a violation of the Rehabilitation Act, his allegations necessarily fall outside the scope of the Board's IRA jurisdiction.

The appellant also alleges that he disclosed a violation of the Privacy Act and agency rules and regulations when he reported that the Chief of Staff had unlawfully accessed his credentialing file/documents and thereafter utilized the information obtained to refer him to EAP. PFR File, Tab 1 at 14-15. To this end, in a December 5, 2016 email, the appellant informed agency personnel that his "confidential credentialing file was deliberately accessed to obtain personal information to provide to EAP against [his] wishes and without [his] consent." IAF, Tab 7 at 37. We find that the appellant has made a nonfrivolous allegation that he reasonably believed that he had disclosed a violation of the Privacy Act. *See Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 10 (2011) (concluding that an appellant nonfrivolously alleged that he reasonably believed that the agency had violated the Privacy Act, reasoning that although the agency may not have committed an actual violation, there was no indication that the appellant's job duties required him to be familiar with the intricacies of the Privacy Act).

At the jurisdictional stage, we also find that the appellant made a nonfrivolous allegation of a protected disclosure with regards to his involuntary EAP referral. An EAP is "a voluntary, work-based program that offers free and confidential assessments, short-term counseling, referrals, and follow-up services to employees who have personal and/or work-related problems." U.S. Office of Personnel Management, Employee Assistance Program, Questions and Answers, https://www.opm.gov/frequently-asked-questions/work-life-faq/employee-assistance-program-eap/ (last visited May 15, 2024). Each Federal agency administers its own EAP. *Id.* The appellant referenced emails dated December 8, 2016, and January 12, 2017, wherein he both questioned why he had been

involuntarily referred to EAP and expressed his belief that involuntary referrals are illegal. PFR File, Tab 1 at 5; IAF, Tab 7 at 34-35, 38; *see Mudd*, 120 M.S.P.R. 365, ¶ 9. Accordingly, we find that the appellant made a nonfrivolous allegation of protected disclosures under 5 U.S.C. § 2302(b)(8) via his December 5 and 8, 2016, and January 12, 2017, emails.

> *January 18, 2017 disclosure that the appellant was charged leave without pay (LWOP) for times he was working*

The appellant contends that he disclosed that he had been placed on LWOP in violation of laws, rules, and regulations. PFR File, Tab 1 at 5, 16. In support of this contention, he references a January 18, 2017 email that he sent to an agency management official and the Human Resources Chief wherein he disclosed that he had been "falsely listed as LWOP" in late November 2016 when he was teleworking.[10] *Id.* at 5 (citing IAF, Tab 8 at 4). The appellant stated in the email that he was uncertain as to why he still had not been compensated for this time, and he requested that the "pay issue be correct[ed]." IAF, Tab 8 at 4.

The genesis of his assertions was his disagreement with the agency's rescission of his telework agreement. IAF, Tab 6 at 8, 29, 41, Tab 8 at 8. The appellant disagreed with the validity of these agency actions, and therefore worked from home. IAF, Tab 8 at 4. An employee generally is required to comply with an agency order, even when he may have substantial reason to question it, while taking steps to challenge its validity through whatever channels are appropriate. *Pedeleose v. Department of Defense*, 110 M.S.P.R. 508, ¶ 16, *aff'd per curiam*, 343 F. App'x 605 (Fed. Cir. 2009). Further, while it is a protected activity under 5 U.S.C. § 2302(b)(9)(D) to "refus[e] to obey an order that would require the individual to violate a law, rule, or regulation," the

---

[10] The appellant also asserts that he made a similar disclosure via email on July 7, 2017; however, in his July 7, 2017 email, the appellant asserted that the agency's improper actions concerning his pay stemmed from disability discrimination. PFR File, Tab 1 at 16; IAF, Tab 8 at 40-41. Accordingly, this alleged disclosure falls outside the scope of the Board's IRA jurisdiction. *See McCray*, 2023 MSPB 10, ¶ 22.

appellant's failure to report to work does not fit within this category. His allegation is that the ending of his telework agreement violated agency policy, not that his working in the office was unlawful. Further, the appellant has not claimed that he advised the agency that he was working during periods he did not come into work and therefore was deemed LWOP. We find that a reasonable person in the appellant's position would not believe the agency engaged in wrongdoing by failing to pay him for periods when he failed to report to the office as instructed, even if he questioned the validity of the instruction.

*February 3, 2017 perceived protected activity of filing an OSC complaint*

The appellant avers that he made a protected disclosure on February 3, 2017, when he informed agency personnel that he believed that he had been the victim of whistleblower retaliation and that he had retained legal counsel "who [would] be addressing this issue through [OSC]." PFR File, Tab 1 at 6 (citing IAF, Tab 8 at 9). We surmise that, in asserting that he told the agency that he was planning to report whistleblower reprisal to OSC, the appellant is alleging that the agency perceived that he had engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C). *See Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (explaining that under the broadly worded provision of 5 U.S.C. § 2302(b)(9)(C), disclosures of information to OSC are protected regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law"). An appellant may pursue an IRA appeal on the theory that an agency retaliated against him for its perception that he engaged in activity protected under 5 U.S.C. § 2302(b)(9)(C). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 12 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶ 14; *see Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 7 (2013) (recognizing that one who is perceived as a whistleblower is entitled to protection under whistleblower reprisal statutes even if she has not made protected disclosures). We find that the

appellant has nonfrivolously alleged that the agency perceived him to have engaged in such protected activity.[11]

*February 10, 2017 disclosures of regarding patient care*

The appellant alleges that he disclosed "[v]iolations of the patient standard of care, CAVHCS Staff Bylaws, and Code of Conduct and Patient Safety caused by management's insistence that [the appellant] continue to perform his job even though they PROHIBITED him from 'communicat[ing] with anyone in the Imaging Department, access[ing] information systems, or enter[ing] the Imaging Department even if doing so is necessary for quality patient care' or EVEN IF IT WAS NEEDED TO RESPOND TO AN EMERGENCY."[12]  PFR File, Tab 1 at 5 (capitalization as in original).  To support this allegation, the appellant references two February 10, 2017 emails.  *Id.* (citing IAF, Tab 8 at 6-8).  In these emails, the appellant informed agency officials that restrictions placed on him were "incompatible with the practice of clinical radiology in accordance with generally accepted standards of care."  IAF, Tab 8 at 7.

As background, on February 2, 2017, 8 days prior to the appellant sending this email, the agency temporarily reassigned him to perform staff radiologist duties due to a pending investigation.  *Id.* at 5.  The agency instructed him "to refrain from any involvement with management of the CAVHCS Imaging Service,

---

[11] The appellant relatedly asserts that, "in response to his termination," he told agency personnel that he had gone to OSC.  PFR File, Tab 1 at 16.  However, because all of the alleged personnel actions at issue predate this alleged disclosure, this assertion is unavailing.  *See El*, 123 M.S.P.R. 76, ¶ 10 (explaining that, because the subject personnel action predated the appellant's protected disclosure, the disclosure could not have contributed to the personnel action).

[12] As pointed out by the appellant on review, the administrative judge largely categorized this disclosure as having pertained largely to the appellant's "work location."  PFR File, Tab 1 at 15; ID at 8-9, 10, 11 n.3.  Indeed, the record suggests that, during this same timeframe, the appellant also disclosed that the agency had relocated him to a "small, hot room with no work assignments."  IAF, Tab 1 at 61.  We find that the appellant's assertions regarding his relocation are more appropriately analyzed as an alleged personnel action.  *See* 5 U.S.C. § 2302(a)(2)(A)(xii) (defining as a personnel action "any other significant change in duties, responsibilities, or working conditions").  We have done so below.

to include contacting employees, [and] entering any CAVHCS imaging areas" while the investigation was pending. *Id.*

The appellant asserted, among other things, that the agency's limitation of his interaction with other medical personnel disregarded "the principals [sic] of interaction necessary to maintain a culture of patient safety." *Id.* He also asserted that, per the agency's restrictions, "if a patient had a heart attack and [he was] in a position to respond and administer CPR, [he] should refrain from doing so if the patient [was] in the Imaging Department." *Id.* When a patient requires immediate treatment or careful monitoring, harm may result directly from delays in providing such treatment and monitoring; the occurrence of harm is not dependent on a series of unlikely events. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 20 (2013). Although the emails that the appellant references indicate that the appellant may have been questioning or seeking to clarify the contours of the agency's restrictions, *id.* at 6-8, we find, at the jurisdictional stage, that the appellant's assertions are sufficient to constitute a nonfrivolous allegation that he reasonably believed that he had disclosed a violation of law or a substantial and specific danger to public health or safety, *see Skarada*, 2022 MSPB 17, ¶ 6; *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶¶ 12, 15-23 (2011) (concluding, as relevant here, that disclosures of alleged delays in providing urgent patient care were protected).

*February 16, 2017 disclosure of workplace bullying*

The appellant alleges that he disclosed violations of the agency's "Policy Statement for the Prevention of Workplace Bullying." PFR File, Tab 1 at 5. To this end, he references a February 16, 2017 email wherein he informed the Director of CAVHCS that agency personnel had violated this policy statement, which she had signed. *Id.*; IAF, Tab 8 at 15-17. In this email, the appellant conveyed, among other things, that he had been subjected to "coordinated social and physical exclusion from work-related activities," to include being told that he "may not enter any Imaging Department area or communicate with any employee

in the Imaging Department." IAF, Tab 8 at 16. These allegations appear to pertain, at least in part, to the previously discussed communication restrictions placed on the appellant on or about February 2, 2017. *Id.* at 5.

At the jurisdictional stage, we accept as true the appellant's implicit allegations that the restrictions placed on him were unwarranted, as well as his assertions that the agency's restrictions constituted coordinated social and physical exclusion, i.e., bullying. *See Hessami*, 979 F.3d at 1369. Because the appellant, via his February 16, 2017 email, identified a specific, established agency policy statement and explained why he believed agency personnel had violated the same, we find that he made a nonfrivolous allegation that he reasonably believed that he had disclosed a violation of law, rule, or regulation under 5 U.S.C. § 2302(b)(8). *See Mudd*, 120 M.S.P.R. 365, ¶ 9.

*March through June 2017 harassment complaints*

The appellant does not discernably raise any arguments regarding what the administrative judge categorized as disclosures (8) and (9) in the initial decision, which were allegedly made by the appellant beginning in March 2017. ID at 9. In the initial decision, the administrative judge collectively described these two disclosures as follows:

> In March 2017, you contacted the VA's Harassment Prevention Program. Through June 2017, you also repeated and updated your disclosures to various VA personnel, alleging the VA wrongfully denied you a reasonable accommodation; harassed you; made another wrongful EAP referral; made an unwanted call to your wife; illegally accessed your personnel records; and failed to address the issues you raised.

*Id.* (quoting IAF, Tab 1 at 62).

Although the above allegations are not particularly detailed, they nonetheless assert that the appellant contacted the "VA's Harassment Prevention Program," IAF, Tab 1 at 62. Disclosures of information to any agency component "responsible for internal investigation or review" are protected activity under 5 U.S.C. § 2302(b)(9)(C) regardless of their content, as long as such disclosures

are made "in accordance with applicable provisions of law." *See Fisher*, 2023 MSPB 11, ¶ 8. The agency's website explains that the Harassment Prevention Program (HPP), among other things, provides "centralized tracking, monitoring and reporting processes to proactively respond to allegations of harassment." U.S. Department of Veterans Affairs, Office of Resolution Management, Diversity & Inclusion (ORMDI), HPP, https://www.va.gov/ORMDI/HPP.asp (last visited May 15, 2024); *see Hessami*, 979 F.3d at 1369 & n.5 (explaining that the Board may consider "matters of public record" in determining whether an appellant nonfrivolously alleged she made protected disclosures (citation omitted)). The website also indicates that the agency formed the HPP in response to a mandate "to establish enterprise-wide anti-harassment policies and procedures to ensure allegations of harassment receive a prompt, thorough, *and impartial investigation*." https://www.va.gov/ORMDI/HPP.asp (emphasis added). The agency specifies that harassment need not be "accompanied by an EEO basis" to fall within its HPP. *Id.*

The Board's IRA jurisdiction does not extend to claims of reprisal for opposing practices made unlawful by either Title VII, *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-23, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023), or the Rehabilitation Act, *McCray*, 2023 MSPB 10, ¶¶ 19-22. Nor does the Board's jurisdiction extend to claims of reprisal for filing EEO complaints on one's own behalf that do not seek to remedy whistleblower reprisal, *id.*, ¶¶ 23-30; *Edwards*, 2022 MSPB 9, ¶¶ 24-25. There is some evidence in the file that the appellant's March through June 2017 harassment complaints may have been limited to matters arising under EEO law. IAF, Tab 6 at 40. However, we find that, at the jurisdictional stage, the appellant has made a nonfrivolous allegation that he engaged in protected activity under 5 U.S.C.

§ 2302(b)(9)(C) through his contact with HPP, and that the parties may develop this issue on remand.[13]

*October 11, 2017 disclosure of falsification of Government records*

Lastly, the appellant avers that he disclosed the falsification of Government records. PFR File, Tab 1 at 6. To this end, he cites a page of an October 11, 2017 letter that his attorney sent on his behalf to the agency's Professional Standards Board. *Id.* (citing IAF, Tab 6 at 44, 53). This October 11, 2017 letter states that, on October 4, 2016, the Human Resources Chief completed an incident report concerning various improper agency actions; however, 1 week after she completed this report, the appellant's supervisor accessed and "materially altered" the report to (1) change the name of a physician who had treated the appellant and (2) falsely indicate that it was the appellant who had changed the name of the physician. IAF, Tab 6 at 53-54. Deliberate falsification of a Government document is prohibited by 18 U.S.C. § 1001(a)(3). Therefore, we find that the appellant made nonfrivolous allegations that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) on October 11, 2017. *See DiGiorgio*, 84 M.S.P.R. 6, ¶ 14.

The appellant made nonfrivolous allegations of personnel actions.

In addition to the above-discussed disclosures and activities, the appellant alleged that the agency took several retaliatory personnel actions against him. To this end, he alleged that the agency wrongfully denied him incentive pay. IAF,

---

[13] In support of his claim that he established jurisdiction over some of his alleged protected disclosures, the appellant also states as follows in his petition: "[s]ee also the fact that OAWP launched an investigation into these [disclosed] legal violations." PFR File, Tab 1 at 10. "OAWP" is the Department of Veterans Affairs Office of Accountability and Whistleblower Protection, an agency component that, among other things, "investigates . . . [a]llegations of whistleblower retaliation against VA supervisors." https://www.va.gov/accountability/ (last visited May 15, 2024). The appellant does not claim that he contacted OAWP, or say when he made such a contact. Therefore, he has failed to make a nonfrivolous allegation of Board jurisdiction. On remand, he may seek to establish jurisdiction over his claim, if any, that he engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(C) by filing a complaint with OAWP.

Tab 1 at 52. Specifically, he asserted that, as part of a recruitment incentive, the agency had agreed to provide him with "an additional 20% of his salary for [2] years" but never did so, even after a September 2016 audit confirmed that he was entitled to the payment. *Id.* As relevant here, the definition of "personnel action" includes "a decision concerning pay, benefits, or awards." 5 U.S.C. § 2302(a)(2)(A)(ix). Insofar as the appellant asserted that the agency rendered an unfavorable incentive pay decision, we find that he made nonfrivolous allegations of a personnel action under this provision.

The appellant alleged that the agency forced him to step down as Chief of Imaging in October 2016. IAF, Tab 1 at 48. In this regard, he asserted that an agency physician, acting on behalf of CAVHCS, informed him that he could be a "tele-radiology provider," i.e., that he could telework, only if he "step[ped] down as the Chief of Imaging." *Id.* He averred that he accepted the agency's offer because it met the needs of his family and he "was essentially forced to take it." *Id.* Included in the definition of "personnel action" is "a detail, transfer, or reassignment." 5 U.S.C. § 2302(a)(2)(A)(iv). To the extent the appellant alleged that he was subjected to a reassignment under 5 U.S.C. § 2302(a)(2)(A)(iv), we find his allegation unavailing.[14] Indeed, the appellant did not allege that an agency employee reassigned or threatened to reassign him; rather, he alleged that, presented with unpleasant options, he elected to relinquish being Chief. IAF, Tab 1 at 48; *see* 5 U.S.C. § 2302(b)(8)-(9) (describing it as unlawful for an employee to "take or fail to take, or threaten to take or fail to take, a personnel action . . . because of" a protected disclosure or activity). Accordingly, we find

---

[14] As indicated herein, the appellant did not discernably allege that this change in position resulted in a loss of pay or grade; accordingly, we construe his allegation as pertaining to a reassignment, as opposed to a demotion. *See Onasch v. Department of Transportation*, 63 M.S.P.R. 158, 162 (1994) (employing the definition at 5 C.F.R. § 210.102(b)(12), i.e., "a change of an employee, while serving continuously within the same agency, from one position to another without promotion or demotion," to determine whether an appellant was reassigned for purposes of 5 U.S.C. § 2302(a)(2)(A)(iv)).

that the appellant's assertions do not amount to a nonfrivolous allegation of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iv).

Also included in the relevant definition of "personnel action" is "an action under chapter 75 of this title or other disciplinary or corrective action." 5 U.S.C. § 2302(a)(2)(A)(iii). To the extent the appellant, through his allegations regarding stepping down as Chief, sought to raise a constructive demotion claim, his allegations are unavailing. The Board has held that an alleged constructive removal may constitute a personnel action for purposes of an IRA appeal. *Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 & n.5 (2014); *see Mintzmyer v. Department of the Interior*, 84 F.3d 419, 423 (Fed. Cir. 1996) ("The legal standard for establishing a constructive discharge is the same regardless of whether the discharge was allegedly in retaliation for whistleblowing or for filing a discrimination claim."). By analogy, a nonfrivolous allegation of a constructive demotion may be a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii). Here, the appellant did not allege that his reassignment resulted in a reduction in grade or a reduction in pay. IAF, Tab 8 at 34; *see Loggins v. U.S. Postal Service*, 112 M.S.P.R. 471, ¶ 10 (2009) (explaining that, for a reassignment to fall within the Board's chapter 75 jurisdiction, it must result in a reduction in grade or a reduction in pay). Accordingly, we find that the appellant failed to make a nonfrivolous allegation of a personnel action regarding his apparent reassignment.

The appellant claimed that his supervisor did not allow him to attend "a required VA training activity" in February 2017. IAF, Tab 1 at 53, 59. A decision concerning training may constitute a personnel action under the statute. *See* 5 U.S.C. § 2302(a)(2)(A)(ix). However, such a decision qualifies as a personnel action only if it "may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other [personnel] action [as described in 5 U.S.C. § 2302(a)(2)(A).]" *Id.* Thus, the plain wording of the statute explicates that not all denials of training opportunities are covered

personnel actions. *Id.*; *see Simone v. Department of the Treasury*, 105 M.S.P.R. 120, ¶ 9 (2007) (explaining that there must be, at a minimum, a moderate probability that the training would have resulted in some type of personnel action); *see also Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 387 (1997) (same). Here, the appellant did not allege that the training would potentially lead to an appointment, promotion, or a performance evaluation. Further, although he said the training was "required," he did not identify the nature of the training or state that it was necessary for his continued employment. Thus, we find that his allegation regarding training does not amount to a nonfrivolous allegation of a personnel action under the statute.

The appellant alleged that he was subjected to both harassment and a hostile work environment. IAF, Tab 1 at 31. He asserted, among other things, that the following incidents occurred during his tenure at CAVHCS: (1) the agency cancelled his telework agreement; (2) his immediate supervisor materially altered an incident report relating to his job-induced emotional distress; (3) agency management began documenting his conduct and performance deficiencies; (4) agency management involuntary referred him to EAP; (5) he was excluded from discussions and communications on a broad range of topics; (6) the agency failed to respond to his concerns regarding Dr. A bringing a gun onto agency premises; (7) the agency removed the Human Resources Chief, who had reported improper agency actions on his behalf; (8) the agency threatened to report him as AWOL; (9) the agency deliberately delayed his receipt of wages; and (10) he was relocated to a small, hot room located 40 miles away from his official primary duty station and not permitted to communicate with any Imaging Department employees. *Id.* at 45-53. As relevant to these allegations, the definition of "personnel action" includes "any . . . significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The Board has found that, although "significant change" should be interpreted broadly to include harassment and discrimination that could have a chilling effect on

whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical consequence for an appellant constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Skarada*, 2022 MSPB 17, ¶¶ 15-16. To this end, the agency actions must have practical and significant effects on the overall nature and quality of the appellant's working conditions, duties, or responsibilities. *Id.* Here, we find that the appellant's allegations collectively amount to a nonfrivolous allegation of a significant change in his working conditions. *See id.*, ¶¶ 17-18 (concluding that the appellant made a nonfrivolous allegation that the agency had subjected him to a significant change in duties, responsibilities, or working conditions when he alleged, among other things, that supervisory personnel both directed him to stop attending leadership meetings and performing certain extra duties and subjected him to multiple investigations). [15] Thus, the appellant has made a nonfrivolous allegation of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii).

---

[15] The appellant also alleged that he became the target of an agency investigation on February 2, 2017, when he was temporarily reassigned. IAF, Tab 1 at 52-53. An investigation into an allegation of misconduct is not a personnel action per se. *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 10 (citing *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020)). It is proper to consider evidence regarding an investigation if it is so closely related to an alleged personnel action that it would have been a pretext for gathering information to retaliate for whistleblowing. *Id.* The appellant generally alleges that this investigation was accompanied by some of the other incidents that constitute his harassment claim, such as his assignment to an isolated room. IAF, Tab 1 at 52-53. However, he has not claimed that it resulted in a personal action or that the manner in which he or others were questioned during the investigation significantly changed his duties, responsibilities, or working conditions. *Id.* In particular, we note that the appellant's termination letter references an investigation that began in or around September 2017, 7 months after the investigation the appellant raises in his appeal. IAF, Tab 6 at 43. Accordingly, he has not established Board jurisdiction over the alleged investigation. *See Spivey*, 2022 MSPB 24, ¶¶ 12-13 (finding that the appellant failed to nonfrivolously allege that an investigation was a personnel action when it did not result in any proposal of disciplinary or corrective action, the appellant's detail, transfer, or reassignment, or any other personnel action identified in 5 U.S.C. § 2302(a)(2)(A), and the appellant did not allege that the investigation had any practical or significant effects on the overall nature and quality of her working conditions, duties, or responsibilities).

Lastly, the appellant alleged that, on October 23, 2017, the agency removed him from his position during his probationary period. IAF, Tab 1 at 56, 62, Tab 6 at 43. The appellant's termination letter indicates that he was appointed under the authority of 38 U.S.C. § 7401(1) and subject to a 2-year probationary period. IAF, Tab 6 at 43. As stated, the definition of "personnel action" includes "an action under chapter 75 of this title or other disciplinary or corrective action." 5 U.S.C. § 2302(a)(2)(A)(iii). An agency physician appointed under the authority of 38 U.S.C. § 7401(1) may bring an IRA appeal alleging that termination was retaliatory. *Hawker v. Department of Veterans Affairs*, 123 M.S.P.R. 62, ¶ 2 n.1 (2015). We find that the appellant made a nonfrivolous allegation of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii) regarding his termination.

Accordingly, we find that the appellant made nonfrivolous allegations of the following three personnel actions: (1) the denial or withholding of his recruitment incentive pay; (2) a significant change in duties, responsibilities, or working conditions; and (3) his termination.

<u>The appellant satisfied the contributing factor jurisdictional criterion and is entitled to a hearing on the merits.</u>

An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way to establish contributing factor is the knowledge/timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009). Under this test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the appellant's protected activity or disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity or disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Wadhwa*, 110 M.S.P.R. 615, ¶ 12.

Here, the appellant alleged that agency leadership was collectively aware of his disclosures and activities. IAF, Tab 1 at 40, 47. To this end, he alleged that "[t]he entirety of illegal, unethical, and despicable acts committed over a many month period and continuing to present [was] so extreme it could have only occur[ed] with the full cooperation of CAVHCS' leadership." *Id.* at 47. Moreover, it is undisputed that the appellant worked at CAVHCS for less than 2 years. IAF, Tab 6 at 43. Accordingly, we find that the appellant made nonfrivolous allegations that, if proven, would satisfy the contributing factor criterion via the knowledge/timing test.[16] *See Wadhwa*, 110 M.S.P.R. 615, ¶ 12 (explaining that, if an appellant satisfies the knowledge/timing test, the appellant has demonstrated that a protected disclosure was a contributing factor in a personnel action); *see also Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (explaining that the Board has held that a personnel action taken within approximately 1 to 2 years of a protected disclosure satisfies the knowledge/timing test).

Accordingly, we find that the appellant made nonfrivolous allegations of protected disclosures under 5 U.S.C. § 2302(b)(8) and protected activity under 5 U.S.C. § 2302(b)(9)(C), which contributed to the following: (1) the denial or withholding of recruitment incentive pay; (2) a significant change in duties, responsibilities, or working conditions; and (3) his termination. Once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim, which he must prove by preponderant evidence.

---

[16] Some of the allegations giving rise to the appellant's claim of a significant change in duties, responsibilities, or working conditions predate some of his alleged disclosures; thus, the disclosures could not have contributed to those elements of this personnel action. *See El*, 123 M.S.P.R. 76, ¶ 10 (explaining that, because the subject personnel action predated the appellant's protected disclosure, the disclosure could not have contributed to the personnel action). For instance, the appellant's December 5, 2016 Privacy Act-related disclosure could not have contributed to cancellation of his telework agreement, which occurred in September/October 2016. IAF, Tab 7 at 19, 36-37. At the merits stage of the proceeding, the administrative judge should be mindful of these timing issues.

*Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Thus, we find that the appellant is entitled to his requested hearing and a decision on these claims. IAF, Tab 1 at 2. If the appellant proves that a protected disclosure or activity was a contributing factor in a personnel action taken against him, he is entitled to corrective action unless the agency proves by clear and convincing evidence that it would have taken the same personnel actions in the absence of the protected disclosure. 5 U.S.C. § 1221(e); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

The administrative judge should permit the parties to engage in discovery on remand.

The appellant also asserts that the administrative judge "err[ed] by making fact determinations . . . without the benefit of a developed record where discovery was allowed." PFR File, Tab 1 at 16. To the extent the appellant argues that the administrative judge erred by making a jurisdictional determination before the parties had engaged in discovery, his argument is unavailing.

An administrative judge has broad discretion in ruling on discovery matters, and the Board will not find reversible error in such rulings absent an abuse of discretion. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 25. The administrative judge advised the parties that they could initiate discovery within 30 days of the February 26, 2018 Acknowledgment Order. IAF, Tab 2 at 3. On the same date, he informed the parties that the record on jurisdiction would also close in 30 days. IAF, Tab 3 at 8. A party does not need the Board's approval to engage in discovery, and the Board generally only becomes involved in discovery matters if a party files a motion to compel. *King v. Department of the Navy*, 98 M.S.P.R. 547, ¶ 10 (2005), *aff'd per curiam*, 167 F. App'x 191 (Fed. Cir. 2006); *see* 5 C.F.R. § 1201.71 (explaining that parties are expected to start and complete discovery with a minimum of Board intervention). The appellant does not allege that he initiated a timely discovery request, and he did not file a motion to extend the discovery period below. Therefore, we discern no abuse of discretion by the administrative judge.

In any event, given that we find jurisdiction and are remanding the appeal, any inability to conduct discovery on the jurisdictional issue has not harmed the appellant's substantive rights. *White v. Government Printing Office*, 108 M.S.P.R. 355, ¶ 9 (2008) (explaining that the Board will not find reversible error in an administrative judge's discovery rulings absent an abuse of discretion that prejudiced the appellant's substantive rights). Prior to holding a hearing, the administrative judge shall afford the parties an opportunity to conduct discovery and order the parties to submit any other evidence that he deems necessary to adjudicate the merits of this appeal. *See Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 14 (2016).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:        _____
                                    Gina K. Grippando
                                    Clerk of the Board

Washington, D.C.